## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

United States of America,

v.                                        Case No. 1:19-cr-00399

Arnold Dewitt Holland,                    Michael L. Brown
                                          United States District Judge
                      Defendant.

_____/

## <u>OPINION & ORDER</u>

The United States charged Defendant Arnold Dewitt Holland with producing child pornography, enticing a minor, committing a felony offense involving a minor as a convicted sex offender, and possessing and distributing child pornography. (Dkt. 1.)  The Government claims he committed these crimes while on supervised release after a prior conviction for the receipt of child pornography, the revocation of his supervised release in that case, and the imposition of another term of supervised release.  (*Id.*)  Defendant Holland moved to suppress evidence from four cell phones United States Probation Officers seized from his residence.  (Dkts. 13; 16.)  Magistrate Judge Larkins held an evidentiary hearing and heard testimony from Georgia Bureau of Investigation

Special Agent Elizabeth Bigham and Senior U.S. Probation Officer Shannon Brewer.   (Dkts. 23; 28.)   He issued a Report and Recommendation saying this Court should deny Defendant Holland's motion.  (Dkt. 36.)  The Court adopts that recommendation.

## I.   Background

In 2004, Defendant Holland was sentenced to 151 months imprisonment after pleading guilty to ten counts of receiving child pornography.  (Dkt. 24-6.)  He was released from custody in July 2014 and began serving a three-year term of supervised release.  (*Id.*; Dkt. 28 at 48–49.)  Both before his release from custody and when he began serving his term of supervised release, Defendant Holland resided at a halfway house known as Dismas House.   In February 2015, he was expelled from Dismas House for having a cell phone with photo capabilities — a violation of house rules.  (Dkt. 28 at 48.)

On January 21, 2017, Defendant Holland's probation officer visited him at his residence and discovered several unauthorized cell phones. (*Id.* at 50.) The officer asked Defendant Holland if they contained

pornography, and he said "there would be ages 16 and up." (*Id.*)[1] After confiscating the phones and searching them, the probation officer moved to revoke Defendant Holland's supervised release in May 2017 claiming he had failed to follow the instructions of a compliance contract that was part of his supervised release by (1) possessing seven cell phones (capable of accessing the internet, and having done so without first obtaining written permission from his supervising officer) and (2) possessing two phones that contained sexually oriented material or pornography. (Dkts. 28 at 51; 24-7.) Defendant Holland admitted these violations. (Dkts. 28 at 51; 24-8.) The Court revoked his supervised release and sentenced him to one day imprisonment and twenty-four months of supervised release, with six months to be served at Dismas House. (Dkt. 24-8.)

On August 3, 2017, Holland entered into a new sex offender compliance contract as part of the conditions of his supervised release. (Dkt. 24-9.) The compliance contract stated that he could not "possess, purchase or subscribe to any sexually oriented material or pornography

---

[1] During the evidentiary hearing before Magistrate Judge Larkins, Officer Brewer explained that she did not monitor Defendant Holland in January 2017. She began monitoring him in March 2018 and, at that time, familiarized herself with his probation file and learned of his statement to her predecessor officer in January 2017. (Dkt. 28 at 42–43.)

to include mail, computer, telephone (900 telephone numbers), video or television, nor patronize any place where such material or entertainment is available." (*Id.* at 1.) He was also required to "obtain written approval from [his] U.S. Probation Officer to use an electronic bulletin board system, services that provide access to the Internet, or any public or private computer network" and to "permit routine inspection of any computer systems, hard drives, and other media storage materials to confirm compliance with this condition," with such inspection "to be no more intrusive than is necessary to ensure compliance with this condition." (*Id.* at 2.) He additionally agreed that "[a]ny computer system which is accessible to [him] is subject to inspection" and that he would "permit confiscation and/or disposal of any material considered contraband." (*Id.*) In short, during his supervised release, Defendant Holland was not allowed to (1) possess any sexually oriented material, (2) use the internet without permission, or (3) possess any cell phone capable of accessing the internet. (*Id.*)

Defendant Holland resided at Dismas House again from October 2017 until April 12, 2018. (Dkt. 28 at 52, 54, 67–68.) As explained above, Dismas House rules prohibited him from possessing a cell phone without

approval or possessing any other device that could access the internet. (*Id*. at 68.)   Though Holland requested approval to possess internet-capable devices, Dismas House never gave its authorization.   (*Id*. at 53.) Defendant Holland criticizes Magistrate Judge Larkins for not including the fact that he passed a polygraph test in early 2018 (while at Dismas House) indicating (he says) he was not accessing the internet, possessing cell phones, or viewing pornography.   (Dkt. 9.)   He took and passed another polygraph examination in August 2018.   (Dkt. 28 at 76.)   He also asked his probation officer several times for permission to have a cell phone with internet capabilities but received no such approval.   (*Id*. at 53, 72.)

As explained above, Officer Brewer began supervising Defendant Holland in March 2018.   (*Id*. at 43.)   Upon receiving the assignment, she reviewed Defendant Holland's presentence investigation report, the judgment and commitment materials, documents regarding his case, notes from previous supervising officers, and his compliance contract. (*Id*. at 44–45.)   Officer Brewer learned that Defendant Holland had previously been charged with sex offenses involving minors, including the 1996 case that resulted in a mistrial and the 1999 case involving a minor

boy that was dismissed after the victim recanted.  (*Id.* at 46–47.)  She also learned that, after dismissal of the 1996 case, federal agents recovered Defendant Holland's diary, which showed he had written extensively about his relationship with the victim and urged the victim to recant his earlier allegations against Defendant Holland.  (*Id.* at 47.) Officer Brewer also learned details concerning the charges underlying Defendant Holland's 2004 federal conviction, his 2015 dismissal from Dismas House for having an unauthorized cell phone, and the 2017 revocation of his supervised release.  (*Id.* at 48.)  She also knew that, as part of his sex offender treatment in 2014, he had taken a psychosexual evaluation which scored him as having a high risk of reoffending.  (*Id.* at 52.)

On March 31, 2018, the National Center for Missing and Exploited Children ("NCMEC") received a cybertip indicating that, in December 2017 and January 2018, someone using the name "yungcool1s" uploaded four images of prepubescent boys to Instagram.  (Dkt. 28 at 12–13, 28; Gov't Ex. 1.)[2]  Instagram reported that the display name for the account

---

[2] The law requires internet service providers to report suspected child pornography, child sex trafficking, or online exploitation of a child to

was "Yung In Atl" and that the associated email address was branbarn90@gmail.com.  (Dkt. 28 at 13, 28.)   NCMEC forwarded the information to the GBI, which assigned it to SA Bigham in April 2018. (*Id.* at 10, 27.)  The information she received from NCMEC include an IP address associated with one of the uploads.  (*Id.* at 14–16.)  From publicly available information, SA Bigham determined T-Mobile owned the IP address, suggesting the image had been uploaded from a mobile device. (*Id.* at 14–15, 34.)   Unfortunately, T-Mobile no longer had any information about the IP address.  (*Id.*)  She also sent a subpoena to Google for subscriber information on the "branbarn90" Gmail account. (*Id.*)   Google provided information linking that email with the phone number 404-914-4767.  (*Id.* at 15–18; Dkt. 24-3.)  SA Bigham then learned that Defendant Holland had listed that phone number on his Georgia driver's license.  (Dkt. 28 at 16–18.)

---

NCMEC in the form of a "cybertip."  (Dkt. 28 at 9); *see also* 18 U.S.C. § 2258A (reporting requirements for providers to reduce and prevent "online child sexual exploitation"; providing  further that NCMEC may forward reports to state and federal law enforcement). Cybertips pertaining to Georgia are forwarded to and handled by a GBI task force. (*Id.*)

SA Bigham looked into Defendant Holland and learned that he had a criminal history, had been convicted of child exploitations, and was a registered sex offender. (*Id.* at 18.) SA Bigham queried NCMEC for any other cybertips including "yungcool1s" and, in December 2018, obtained a separate NCMEC cybertip from Tumblr with what appeared to be hundreds of links to suspected child pornography; however, she was unable to view the images because the links no longer functioned. (*Id.*; *see also* Dkt. 24-4.)

On January 3, 2019, SA Bigham called Officer Brewer and reported that the GBI had received a cybertip that Holland was uploading erotic images of ten- to twelve-year-old boys to Instagram. (Dkt. 28 at 21, 25, 60.) SA Bigham told Officer Brewer that the boys were not entirely nude, but that an outline of their penises could be seen in the photographs. (*Id.*) SA Bigham also reported that Defendant Holland's phone number had been used to establish the Instagram account. (*Id.*) Neither Officer Brewer nor SA Bigham recalled whether SA Bigham told Officer Brewer the dates on which the four images had been uploaded to Instagram. (*Id.* at 21, 60–65.) SA Bigham could not recall the specifics of the conversation but testified that she provided Officer Brewer the

information she had learned from her investigation of the NCMEC lead. (*Id.*)

Based on the information she received from SA Bigham, as well as her other knowledge of Defendant Holland's behavior and criminal activity (including the revocation of his prior supervised release and dismissal from Dismas House for having an unauthorized cell phone), Officer Brewer was concerned that Defendant Holland had violated his compliance contract.[3] (*Id.* at 60–61.) On January 14, 2019, she and other Probation Officers searched Defendant Holland's residence and seized four cell phones containing evidence used to file criminal charges in this case. (*Id.* at 24, 80–81.)

Defendant Holland moved to suppress the search of his home, the seizure of the phones, and (as a result) the search of the phones. The Magistrate Judge concluded that the totality of the circumstances

---

[3] Officer Brewer testified that before the search, she did not know when the four images had been uploaded to Instagram. (Dkt 28 at 65.) But, according to Officer Brewer, even if SA Bigham had told her that the images had been uploaded approximately a year before the search, Officer Brewer would still have had the same concerns because "all the risks were still present" — namely, that Defendant Holland had unauthorized access to the internet and possession of sexually oriented material. (*Id.* at 61–62, 65.)

established a reasonable suspicion that Defendant Holland had violated the conditions of his release.   He thus recommended denial of Defendant Holland's motion to suppress.  (Dkt. 36 at 15–16.)  Defendant Holland filed objections to that recommendation.  (Dkt. 40.)

## II.   Legal Standard

After conducting a careful and complete review of the findings and recommendations, a district judge may accept, reject, or modify a magistrate judge's report and recommendation.   28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59; *Williams v. Wainwright*, 681 F.2d 732, 732 (11th Cir. 1982) (per curiam).  A district judge "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1).  The district judge should "give fresh consideration to those issues to which specific objection has been made by a party." *Jeffrey S. v. State Bd. of Educ. of Ga.,* 896 F.2d 507, 512 (11th Cir. 1990) (citation omitted).  For those findings and recommendations to which a party has not asserted objections, the court must conduct a plain error review of the record. *United States v. Slay*, 714 F.2d 1093, 1095 (11th Cir. 1983).

Parties filing objections to a magistrate judge's report and recommendation must specifically identify those findings to which they object. *Marsden v. Moore*, 847 F.2d 1536, 1548 (11th Cir. 1988). "Frivolous, conclusive, or general objections need not be considered by the district court." *Id.* The Court has conducted a de novo review of Defendant Holland's motions to suppress.

## III. Analysis

Defendant Holland claims the Magistrate Judge erred in finding the information Officer Brewer had on the day of the search was sufficient to create a reasonable suspicion to believe he had violated the terms of his supervised release. (Dkt. 40 at 13, 17.) He claims Officer Brewer based her search only on "the mention of Mr. Holland's phone number being associated with a vague cybertip (that did not contain child pornography)." (*Id.* at 16.) He claims that information was insufficient to pass constitutional muster. This Court disagrees.

Probationers are entitled to protection from unreasonable searches and seizures under the Fourth Amendment. *See Owens v. Kelley*, 681 F.2d 1362, 1367–68 (11th Cir. 1982). Their expectation of privacy, however, is diminished. *Id.* "Such limitations are permitted because

probationers have been convicted of crimes and have thereby given the state a compelling interest in limiting their liberty in order to effectuate their rehabilitation and to protect society." *Id.* at 1367. The Eleventh Circuit has held that a warrantless search of a probationer's residence by probation officers is constitutionally permissible where it is based on a "reasonable suspicion" that the probationer is in violation of his probation conditions or engaged in criminal conduct. *See United States v. Carter*, 566 F.3d 970, 975 (11th Cir. 2009); *see also United States v. Rile*y, 706 F. App'x 956, 960 (11th Cir. 2017) ("[P]robation officers are required to have reasonable suspicion of criminal conduct in order to search a probationer's residence when the terms of probation do not require him to submit to warrantless searches."), *cert. denied*, 138 S. Ct. 699 (2018); *United States v. Wasser*, 586 F. App'x 501, 505 (11th Cir. 2014) (concluding that, after probation officers lawfully entered a probationer's residence, they developed reasonable suspicion that probationer had violated the terms of his probation, justifying a search of the residence for additional violations); *United States v. Gomes*, 279 F. App'x 861, 869 (11th Cir. 2008) ("A probationer's house may be searched based upon reasonable suspicion."); *United States v. Denton*, No. 1:11-CR-00546-AT-RGV, 2012

WL 3871929, at *7–8 (N.D. Ga. June 19, 2012) (all that was required to search a probationer's computer was reasonable suspicion, even where the probation agreement did not require him to submit to warrantless searches), *report and recommendation adopted*, 2012 WL 3871927 (N.D. Ga. Sept. 5, 2012).  Reasonable suspicion consists of a sufficiently high probability that criminal conduct (or conduct in violation of probation conditions) is occurring to make the intrusion on the individual's privacy interest reasonable.  *United States v. Yuknavich*, 419 F.3d 1302, 1311 (11th Cir. 2005).  To determine whether the officer has a particularized and objective basis for suspected wrongdoing, the court must examine the totality of the circumstances and "take stock of everything [officers] knew before searching."  *Id.*

Having reviewed the evidence presented de novo, this Court agrees with Magistrate Judge Larkin's conclusion that the totality of the circumstances gave Officer Brewer reasonable suspicion to believe Defendant Holland violated the conditions of his release, including his compliance contract.  At the time of the search, Officer Brewer knew Defendant Holland had a lengthy criminal history involving sexual offenses against minors, including the receipt of child pornography, and

a sexual proclivity for minor boys.  She knew of the 1996 mistrial on sex offenses involving minors, the dismissal of the 1999 case involving a minor boy, and the diary entries in which Defendant Holland wrote about convincing the boy to recant his allegations.  She knew he had a psychosexual evaluation at the time of his release in 2014 and that it determined he was a high risk for reoffending.  She knew that in 2015, Dismas House expelled him for possession of an unapproved cell phone.  She knew that he had previously admitted violating conditions of supervised release for his 2004 conviction by possessing seven cell phones capable of internet access and two phones that contained pornography.  She knew that, when asked if the phones contained pornography, Defendant Holland said "there would be ages 16 and up." (Dkt. 28 at 50.) In his objections to the Report and Recommendation, Defendant Holland says the Magistrate Judge erred in characterizing this testimony as an admission by him that there would be child pornography on the phones. (Dkt. 40 at 6.)  He recognizes the Magistrate Judge did not expressly state this but insists "it was implied by the [M]agistrate [J]udge." (*Id.*)  The Magistrate Judge accurately summarized the testimony and made no inaccurate "implications."  Keep in mind Defendant Holland did not say

the phones would only contain adult pornography or something like that. He said "there would be ages 16 and up."[4]

The fact that he was not prosecuted for possessing child pornography on that occasion (or even that no such images were found on the phones in 2017) is irrelevant. Regardless of what might have been found, Defendant Holland said there would be images of people as young as 16 years old. The presence or absence of child pornography was not the issue — he violated the conditions of his supervised release

---

[4] Defendant Holland raises several other objections to the Magistrate Judge's recitation of facts. The Magistrate Judge, for example, wrote that, after Dismas House expelled Defendant Holland in February 2015 for possessing an unauthorized cellular telephone, probation took no action to revoke his supervision. (Dkt. 36 at 4.) Defendant Holland says this reference "implies that [Defendant Holland] may have been in violation" of the terms of his supervised release by having the cell phone when his conditions did not prevent him from doing so. (*Id.*) The Magistrate Judge, however, never said that and made it clear that his possession of the phone was a violation of Dismas House rules. That was why the halfway house expelled him. (Dkt. 36 at 4.) Defendant Holland ignores the salient fact – that he possess a cell phone when he was not authorized to do so. The Court notes Defendant Holland's point and understands which rules he violated. Defendant Holland further argues that the R&R improperly found he was "removed" from a sex offender treatment group for making excuses and attempting to manipulate the group. (Dkt. 40 at 7.) Defendant Holland explains that he was not "removed" but rather was "voted out" of the group for being manipulative. (*Id.*)  To the extent there is a difference, the Court accepts Defendant Holland's version of the facts.

by possessing the phones and any pornography.  Officer Brewer knew he had admitted to possessing pornography and said he thought it might include photos of people 16 and up at the time she decided to search his house in 2019.

She also knew that he had access to the internet in early 2017 as he said something to his treatment provider at the time about having seen a message on Snapchat. (Dkt. 28 at 50–51.)  She also knew that he had been ejected from his sex offender treatment group at about the same time for being manipulative.  (*Id.*)  All of this means that Officer Brewer knew Defendant Holland had not complied with the conditions of his supervised release in significant ways.  On cross examination, she testified that she knew Defendant Holland "had made several comments to polygraphers [and] to treatment providers about having used internet capable devices" while on supervised release.  (Dkt 28 at 67.)  This included knowing that, in 2015 after failing a polygraph examination, Defendant Holland admitted using another person's phone to look at images, fantasizing about minors, and trading images with two men he had met in prison.  (*Id.* at 57–59.)

She also knew that, in December 2017 and January 2018, someone

using an Instagram account linked to a phone number Defendant Holland used for his Georgia drivers' license uploaded four erotic images of minor boys. She knew the Instagram account also appeared linked to Atlanta — where Defendant Holland lived — as it had the name "Yung in Atl." She knew that name also suggested an interest in minors. She also knew Defendant Holland wanted to have an internet capable device as he had repeatedly requested permission to do so. (*Id.* at 71–72.) "Taken together, the facts and the rational inferences that follow indicate the high probability that [Defendant Holland] was violating the conditions of his supervised release at the time of the search," including his possession of unauthorized internet-capable devices and sexually oriented material/pornography. *United States v. Collins*, 683 F. App'x 776, 779 (11th Cir. 2017).

In support of his claim that Officer Brewer based her decision to search his home *only* on a "vague cybertip," Defendant Holland says Officer Brewer was aware of much of this information before the cyber tip. (Dkt. 40 at 16.) He says "the only significant event between the time that Officer Brewer began supervising [Defendant] Holland in March 2018 and the time she executed the search of his home . . . was

the communication by phone from Agent Bigham" about the cybertip. (*Id.*)  He claims the fact Officer Brewer acted quickly to conduct the search after speaking with Agent Bigham indicates the information Agent Bigham provided was the "actual deciding factor" for Officer Brewer to conduct the search.  (*Id.* at 17.)  That may be.  But, it does not mean it was all she had.  She received that information in the context of all the other information she had about him, his prior convictions and arrests, his prior violation of supervised release by possessing internet capable phones and pornography, his admissions at the time of his prior violation, and his desire to access the internet.   The additional information from the cyber tip pointing to specific images linked to his phone number may have been the proverbial straw that broke the camel's back but it was not all Officer Brewer had to consider.[5]  Defendant    Holland's    argument    exhibits    a    fundamental

---

[5] Defendant Holland's suggestion that the Instagram images did not contain child pornography is irrelevant.  The Compliance Contract precluded Defendant Holland from possessing — not just pornography — but any sexually oriented material.  The Instagram posts certainly crossed that line.  (Dkt. 30 at 17–18.)  That the genitalia of the boys depicted in the photographs was not fully exposed does not negate reasonable suspicion that Holland had violated the terms of his supervised release.

misunderstanding of the totality of the circumstances.

Defendant Holland also argues the Magistrate Judge failed to consider "many questions raised by the cybertip." (Dkt. 40 at 15.) He claims, for example, the Magistrate Judge should have considered who owned the phone number at time it was "tied" to the email, what device was used at the time the number and the Gmail account were "tied together," and what ISP was used when the number and email were "tied together." (*Id.*) The law, however, looks to what Officer Brewer knew at the time. Absent evidence that she (or Agent Bigham) turned a blind eye to this information in order to avoid evidence pointing away from Defendant Holland, other things the officers could have done as part of their investigation does not negate reasonable suspicion that existed to form the totality of the circumstances known at the time.

Defendant Holland also says the Magistrate Judge wrongfully ignored the fact that he passed several polygraph examinations. He knew this fact. The Magistrate Judge also knew that, during an examination in 2018 that Defendant Holland passed, he admitted to accessing the internet when he was not allowed to and then later tried to pull that admission back. (Dkt. 28 at 70–71.) The Magistrate Judge

knew that in January 2019 he told his treatment provider he had run into a prior victim by accident — a fact he failed to report to Officer Brewer despite his obligation to do so. (*Id.* at 57.) And, as explained above, the Magistrate Judge also knew that, in 2015, he failed a polygraph test and admitted to using another person's phone to scroll through images and have fantasies about minors, and to having accessed the internet to trade images with men he had met while in prison. (*Id.* at 58-59.). The testimony about Defendant Holland's polygraph examination does not support his argument.

Finally, he argues that the Magistrate Judge wrongfully ignored the significance of the fact he was living at Dismas House in December 2017 and January 2018 when the images were posted to Instagram, was not permitted to have internet access while living there, and was not accused of having violated the terms of his residency. (Dkt. 40 at 13.) Indeed, Defendant Holland passed a polygraph test at that time. The Magistrate Judge considered these facts and properly concluded the mere fact he was not caught using an internet capable device does not mean he did not do so. (Dkt. 36 at 17–18.) After all, mobile devices are portable and relatively easy to conceal. And, during his prior stay at

Dismas House he ignored the rules and had an unauthorized cell phone. (Dkt. 28 at 49.)   Defendant Holland undoubtably demonstrated a penchant for possessing unauthorized mobile devices while on supervised release.

Ultimately, taken together, the totality of the facts (and the obvious inferences that follow) provided Officer Brewer a reasonable suspicion that Defendant Holland was violating the conditions of his supervised release at the time of the search.

## IV. Conclusion

The Court **OVERRULES** Defendant Holland's Objections to the Report and Recommendation (Dkts. 40), **ADOPTS** the Magistrate Judge's Report and Recommendation (Dkt. 36), and **DENIES** Defendant Holland's Motions to Suppress (Dkts. 13; 16).

**SO ORDERED** this 11th day of June, 2020.

_____
MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE