# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

United States of America,

v.                                    Case No. 1:19-cr-399-MLB

Arnold Dewitt Holland,

                    Defendant.

_____/

## **OPINION & ORDER**

Defendant Arnold Dewitt Holland is charged with four counts each of production of child pornography, enticement of a minor, and committing a felony offense involving a minor as a convicted sex offender, as well as one count each of possession of and distribution of child pornography. (Dkt. 1.) In January 2019, while Defendant was on federal supervised release, U.S. Probation searched his house. During the search, U.S. Probation found and seized four cell phones prohibited by Defendant's conditions of release. Defendant moved to suppress evidence obtained from the search. (Dkts. 13; 16.) The Court denied that motion. (Dkts. 36; 43.) Defendant now moves for reconsideration. (Dkt. 90.) The Court denies that motion.

# I.   Background

## A.   Factual Background

In 2004, Defendant was sentenced to 151 months imprisonment after pleadings guilty to ten counts of receiving child pornography. (Dkt. 24-6.)  He was released from custody in July 2014 and began serving a three-year term of supervised release.  (Dkts. 24-6; 28 at 48:16–23.) Before his release from custody and when he began serving his term of supervised release, Defendant resided at a halfway house called Dismas House. (Dkt. 28 at 48:24–49:19.)  In February 2015, he was expelled from Dismas House for having a cell phone with photo capabilities—a violation of house rules.  (*Id.* at 49:18–20.)

On January 21, 2017, Defendant's probation officer visited him at his residence and discovered several unauthorized cell phones.  (*Id.* at 50:2–9.)  The officer asked Defendant if they contained pornography, and he said, "there would be ages 16 and up."  (*Id.* at 50:4–6.)   After confiscating the phones and searching them, the probation officer moved to revoke Defendant's supervised release in May 2017. (Dkts. 28 at 50:7–12; 24-7.)  The Court revoked his supervised release and sentenced him to one day imprisonment and twenty-four months of supervised release,

with six months to be served at Dismas House.  (Dkt. 24-8.)  On August 3, 2017, Defendant entered into a new sex offender compliance contract. (Dkt. 24-9.)  In short, the contract prohibited Defendant from possessing any sexually oriented material, using the internet without permission, or possessing any cell phone capable of accessing the internet.   (*Id.*) Defendant resided at Dismas House again from October 2017 until April 12, 2018.  (Dkt. 28 at 52:16–20, 54:7–11, 67:24–68:1.)  Though Defendant requested approval to possess internet-capable devices, Dismas House never gave its authorization.  (*Id.* at 53:21–54:1.)

In March 2018, Senior U.S. Probation Officer Shannon Brewer began supervising Defendant.  (*Id.* at 43:1–2.)   Upon receiving the assignment, she reviewed Defendant's presentence investigation report, the judgment and commitment materials, documents about the case, notes from supervising officers, and his compliance contract.  (*Id.* at 44:2–45:20.)

On March 31, 2018, the National Center for Missing and Exploited Children ("NCMEC") received a cyber tip indicating, in December 2017 and January 2018, someone using the name "yungcool1s" uploaded four

images of prepubescent boys to Instagram.[1]  (*Id.* at 12:15–13:8, 28:4–5.)
Instagram reported that the display name for the account was "Yung In
Atl" and that the associated email was branbarn90@gmail.com.  (*Id.* at
13:3, 15:19–21.)  NCMEC forwarded the information to the GBI, which
assigned it to Special Agent Elizabeth Bigham in April 2018.  (*Id.* at 10:6–
8, 14:7, 27:22–24.)  The information included an IP address associated
with one of the uploads.  (*Id.* at 14:12–15:8.)  Agent Bigham determined
T-Mobile owned the IP address, suggesting the image had been uploaded
from a mobile device.  (*Id.* at 1423–15:8, 34:19–24.)  Agent Bigham also
sent a subpoena to Google for subscriber information on the "branbarn90"
Gmail account and received the linked phone number.  (Dkts. 28 at
15:17–18:5; 24-3.)  Agent Bigham then learned Defendant had listed the
same number on his Georgia driver's license.  (Dkt. 28 at 18:3–5.)  Agent
Bigham then submitted an intelligence request, with the phone number
and email address, to GBI's intel analyst, and asked her to find what she
could.  (*Id.* at 17:17–20.)  Agent Bigham received the intelligence report

---

[1] The law requires internet service providers to report suspected child
pornography, child sex trafficking, or online exploitation of a child to
NCMEC in the form of a cyber tip.  (Dkt. 28 at 9:17–10:8.); *see also* 18
U.S.C. § 2258A.  Cyber tips pertaining to Georgia are forwarded to and
handled by a GBI task force.  (Dkt. 28 at 10:6–8.)

on December 26, 2018.  (*Id.* at 17:21–25.)  The report states, "Instagram uploads of young boys wearing underwear. Not CP but off behavior for sure.  All I have is phone number for now."  (Dkt. 90-1.)  Agent Bigham also learned Defendant had a criminal history, had been convicted of child exploitations, and was a registered sex offender.  (Dkt. 28 at 18:6–9.)  Agent Bigham queried NCMEC for any other cyber tips including "yungcool1s" and obtained a separate NCMEC cyber tip from Tumblr with what appeared to be hundreds of links to suspected child pornography.  (Dkts. 28 at 18:10–20; 24-4.)

On January 3, 2019, Agent Bigham called Officer Brewer and reported that the GBI had received a cyber tip that Defendant was uploading erotic images of ten- to twelve-year-old boys to Instagram. (Dkts. 28 at 20:18–22:5, 26:3–27:9, 60:4–19.)  Agent Bigham told Officer Brewer the boys were not entirely nude, but an outline of their penises could be seen in the photographs.  (*Id.* at 60:15–17.)  Agent Bigham also reported that Defendant's phone number had been used to establish the Instagram account.  (*Id.* at 21:13–15.)  Agent Bigham could not recall the specifics of the conversation, but testified she provided Officer Brewer the information she learned from her investigation.  (*Id.* at 21:5–15.)  On

January 14, 2019, Officer Brewer and other Probation Officers searched Defendant's residence and seized four cell phones containing evidence used to file criminal charges in this case.  (*Id.* at 24:5–21, 80:17–81:17.)

## B.   Procedural Background

On November 26, 2019, Defendant filed a motion to suppress all evidence obtained and derived from the January 2019 search.  (Dkt. 13.) On December 3, 2019, Defendant filed an amended motion to suppress, acknowledging he was on probation and under a sex offender contract which prevented him from possessing child pornography at the time of the search.  (Dkt. 16.)  Defendant argued reasonable suspicion did not exist because the photographs he was alleged to have possessed were not child pornography.  (*Id.*)

The Magistrate Judge set an evidentiary hearing for December 19, 2010.  (Dkt. 17.)  On December 17, 2019, Defendant filed a motion for discovery requesting the Magistrate Judge order U.S. Probation produce its file on Defendant to him or for U.S. Probation to produce its file to the Magistrate Judge for an *in camera* review.  (Dkt. 21.)  Defendant filed a supplemental motion for discovery contending he should be entitled to review U.S. Probation's entire file.  (Dkt. 22.)  At the beginning of the

evidentiary hearing, the Magistrate Judge denied the motions for discovery.  (Dkts. 23; 28 at 4:21.)  After the Court denied Defendant's motions, the United States called two witnesses, Agent Bigham and Officer Brewer, who testified about the events leading up to U.S. Probation's search of Defendant's house.  (Dkt. 28.)  At the end of the hearing, Defendant's counsel requested the evidence be left open in case he could obtain records showing Defendant had been given permission by the Highland Institute to access the internet.  (*Id.* at 82:15–83:10.)  The Court denied the request.  (*Id.* at 83:22–84:15.)

On February 5, 202, Defendant filed a post-hearing brief arguing U.S. Probation lacked reasonable suspicion to search his house.  (Dkt. 29.)  On March 26, 2020, Magistrate Judge Larkins issued a report recommending Defendant's motion to suppress be denied, finding the totality of the circumstances established reasonable suspicion to believe Defendant had violated the terms of his supervised release at the time of the search. (Dkt. 36.)  On May 1, 2020, Defendant filed objections.  (Dkt. 40.)  On June 11, 2020, the Court overruled Defendant's objections and adopted the report and recommendation ("R&R").  (Dkt. 43.)

On July 2, 2020, Defendant filed a pro se motion requesting new counsel arguing his counsel was ineffective. (Dkt. 51.) Magistrate Judge Larkins granted the motion and appointed new counsel. (Dkts. 63; 64.) While Defendant's motion for new counsel was pending, on July 15, 2019, he filed another pro se motion seeking a 45-day extension of time to file a motion for reconsideration of the Court's order denying his motion to suppress. (Dkt. 57.) The Court denied the motion. (Dkt. 66.) On June 27, 2021, Defendant's counsel filed a motion for reconsideration. (Dkt. 90.) The Court held a status conference. (Dkt. 91.) The Court now rules on the motion for reconsideration.

## II.    Legal Standard

Motions for reconsideration, assuming they are even appropriate in criminal case, "should be reserved for certain limited situations, namely the discovery of new evidence, an intervening development or change in the law, or the need to correct a clear error or prevent a manifest injustice." *Brinson v. United States*, No. 1:04-cr-0128, 2009 WL 2058168, at *1 (N.D. Ga. July 14, 2009) (quoting *Deerskin Trading Post, Inc. v. United Parcel Serv. of Am., Inc.*, 972 F. Supp. 665, 674 (N.D. Ga. 1997)). "Given the narrow scope of motions for reconsideration, they may not be

used in a variety of circumstances." *Id.* "They may not offer new legal theories or evidence that could have been presented in a previously filed motion or response, unless a reason is given for failing to raise the issue at an earlier stage in the litigation." *United States v. Kight*, No. 1:16-cr-99, 2017 WL 5664590, at *2 (N.D. Ga. Nov. 27, 2017). They may not be used to "present the court with arguments already heard and dismissed or to repackage familiar arguments to test whether the court will change its mind." *Brinson*, 2009 WL 2058168, at *1 (quoting *Bryan v. Murphy*, 246 F. Supp. 2d 1256, 1259 (N.D. Ga. 2003)). A motion for reconsideration also "is not an opportunity for the moving party . . . to instruct the court on how the court 'could have done it better' the first time." *Id.* (quoting *Pres. Endangered Areas of Cobb's History, Inc. v. U.S. Army Corps of Eng'rs*, 916 F. Supp. 1557, 1560 (N.D. Ga. 1995)).

## III.   Discussion

Defendant moves to reconsider and reopen the evidence on his motion to suppress for three reasons: "(1) this Court incorrectly found that reasonable suspicion existed at the time of the search such that a manifest injustice would result if not corrected; (2) [Defendant's] counsel was ineffective; and (3) [Defendant] was unconstitutionally prevented

from effectively litigating the issues surrounding this search." (Dkt. 90 at 14.)  Defendant contends his motion should be granted "to prevent a manifest injustice by permitting the introduction of the new evidence undersigned counsel has obtained and to correct clear error that would otherwise occur." (*Id.* at 14–15.)

### A.    Reasonable Suspicion

Defendant enumerates four "clear errors" the Court allegedly committed in finding U.S. Probation had reasonable suspicion to search his house.  (Dkt. 90 at 15.)

First, Defendant contends the facts do not establish a sufficient nexus or link between the Instagram images and Defendant to support reasonable suspicion.   (*Id.* at 15–16.)   This argument is old.   In Defendant's post-hearing brief, he argued there was no evidence he was the person who posted the images and there was only a circumstantial connection between the Instagram account and Defendant's access of the same.  (Dkt. 29 at 11–12, 14–15.)  In his objections to the R&R, Defendant posited seven questions about the link between the images and Defendant which he contended the Magistrate Judge did not answer.

(Dkt. 40 at 15.) In the Court's order adopting the R&R, the Court found there was a link because Officer Brewer

> knew that, in December 2017 and in January 2018, someone using an Instagram account linked to a phone number Defendant Holland used for his Georgia drivers' license uploaded four erotic images of minor boys. She knew the Instagram account also appeared linked to Atlanta — where Defendant Holland lived – as it had the name "Yung in Atl." She knew that name also suggested an interest in minors.

(Dkt. 43 at 16–17.) A motion for reconsideration is not an opportunity to "present the court with arguments already heard and dismissed or to repackage familiar arguments to test whether the court will change its mind." *Brinson*, 2009 WL 2058168, at *1.

Second, Defendant argues the tip information relied upon by Officer Brewer to initiate the search was unverified and unreliable. (Dkt. 90 at 15–17.) This argument is also old. In Defendant's objections to the R&R, he argued Officer Brewer "could not consider Agent Bigham's hunch or speculative information about Mr. Holland's phone number as sufficient." (Dkt. 40 at 17.) Defendant contended Officer Brewer based her decision to search his home only on a "vague cybertip." (*Id.* at 16.) The Court found that while the "additional information from the cyber tip pointing to specific images linked to his phone number may have been the

11

proverbial straw that broke the camel's back," the tip was not all Officer Brewer had to consider.  (Dkt. 43 at 18.)  The Court also noted as long as Officer Brewer did not turn a blind eye to avoid evidence pointing away from Defendant, "other things the officers could have done as part of their investigation does not negate reasonable suspicion that existed to form the totality of the circumstances known at the time." (*Id.* at 19.)

Third, Defendant contends the Court improperly relied upon stale information to find reasonable suspicion.   (Dkt. 90 at 15, 17.)   To determine whether an officer has a particularized and objective basis for suspected wrongdoing, the court must examine the totality of the circumstances and "take stock of everything [officers] knew before searching." *United States v. Yuknavich*, 419 F.3d 1302, 1311 (11th Cir. 2005).  The Court found Defendant's history, the cyber tip, and his recent failure to report an incident to probation as required, all together, gave rise to reasonable suspicion. (Dkt. 43 at 13–20.)  Defendant's argument about stale information "exhibits a fundamental misunderstanding of the totality of the circumstances." (*Id.* at 18–19.)

Fourth, Defendant argues though the Court made a detailed finding of facts listing the factors that support reasonable suspicion, the

Court ignored the factors that weigh against. (Dkt. 90 at 15, 18–19.) The Court addressed this argument in its previous order. (Dkt. 43 at 19–21.) In Defendant's objections to the R&R, he argued the Magistrate Judge wrongfully ignored the significance of the fact he passed several polygraph examinations, he was living at Dismas House in December 2017 and January 2018 when the images were posted, was not permitted to have internet access while there, and was not accused of having violated the terms of his residency. (Dkt. 40 at 9–10, 12–13.) The Court found that the Magistrate Judge considered those facts and properly concluded the mere fact Defendant was not caught using an internet capable device does not mean he did not do so. (Dkt. 43 at 20.) Defendant now argues the Court ignored facts such as (1) no violation occurred while he was at Dismas House, (2) he was never directly accused of accessing the internet without permission, (3) probation officers were directly in contact with him while at the Dismas House, (4) he passed several polygraph examinations, (5) probation officers visited his home in 2017 and 2018, (6) probation officers visited his employment, (7) he was receiving mental health treatment, and (8) he was described as generally compliant with his probation. (Dkt. 90 at 18–19.)   First, the Court

considered and explicitly discussed many of these factors in its previous order. (Dkt. 43 at 19–21.) Second, the Court stands by its holding that the totality of the facts (and the inferences that follow), including these facts weighing against reasonable suspicion, provided Officer Brewer a reasonable suspicion Defendant was violating conditions of his supervised release at the time of the search. The Court finds no clear error in that holding.

## B.   Ineffective Counsel

Defendant next argues his motion to suppress should be reconsidered and the evidence should be reopened because his prior counsel was ineffective in litigating the suppression issue. (Dkt. 90 at 19–21.) He contends his counsel's ineffective assistance warrants reconsideration for three reasons: (1) counsel failed to adequately challenge and impeach the witnesses, (2) counsel admitted that Defendant had impermissibly accessed the internet, and (3) counsel was unable to adequately litigate the motion without obtaining the probation officer's complete file, the Dismas House records, and the Highland Institute records. (*Id.* at 19.)

To show ineffective assistance of counsel, a defendant must establish that (1) counsel's representation was deficient and (2) counsel's deficient representation prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). As to the first prong, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (internal quotation marks omitted). As to the second prong, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Counsel also "cannot be labeled ineffective for failing to raise issues which have no merit." *Card v. Dugger*, 911 F.2d 1494, 1520 (11th Cir. 1990).

First, Defendant argues prior counsel did not adequately challenge and impeach the witnesses during the suppression hearing. (Dkt. 90 at 19–20.) He contends counsel did not admit phone records to show Officer Brewer did not contact him on January 10, 2019. (*Id.* at 20.) Officer

Brewer testified that on January 10, she saw and spoke with Defendant in the parking lot of his workplace. (Dkt. 28 at 63:16–21.) She never testified that she called Defendant or talked to him on the phone. The proffered phone records thus have no bearing on Officer Brewer's credibility.

Defendant also argues counsel failed to impeach Agent Bigham after she testified that the images were "suspected child pornography" even though her report said the images were not child pornography. (Dkt. 90 at 20.) Agent Bigham testified that in her role she receives and investigates cyber tips from NCMEC. (Dkt. 28 at 8:3–10.) She testified her general practice when she receives a tip is to review it when she has time, review the images, video, content, or chats that came with the cyber tip, and then determine the urgency of that tip. (*Id.* at 10:15–20.) If follow-up subpoenas need to be sent or search warrants need to be done, she will then do those. (*Id.* at 10:20–22.)

Agent Bigham then began testifying about the first cyber tip in this case. She testified that Instagram located the four images and submitted a cyber tip to NCMEC on March 31, 2018. (*Id.* at 12:13–23.) The images were attached to the tip. (*Id.* at 13:6–8.) Agent Bigham testified that "in

one of the photos it depicts what appears to be a prepubescent or pubescent male child standing in some rocks." (*Id.* at 13:11–15.) The tip was assigned to Agent Bigham on April 26, 2018. (*Id.* at 14:7.) Agent Bigham testified in detail about her investigation of the tip which included subpoenaing information and requesting NCMEC query through their cyber tips. (*Id.* at 14:10–21:3.) Agent Bigham testified that next in her investigation she called Officer Brewer and although Agent Bigham did not recall the exact conversation, she testified that generally when she calls someone to get involved, she gives them a synopsis of the case. (*Id.* at 21:5–8.) Agent Bigham testified that she likely would have said she received a tip with images, and it appears Defendant is the person using the Instagram account. (*Id.* at 21:9–12.) When asked whether she told Officer Brewer specific upload and login dates, she testified specific dates were unimportant pieces of information at that time because "they were images depicting suspected child pornography that were uploaded to an account." (*Id.* at 21:16–22:5.) Agent Bigham then testified about setting up the search and being present at the search. (*Id.* at 23:23–21.) On cross-examination, when Agent Bigham was asked about the focus of her original phone call with Officer Brewer, she

testified the focus was to say she "believe[s] that [Defendant] is uploading images of suspected child pornography to Instagram" and "potentially committing crimes." (*Id.* at 26:23–25, 27:9.) Defendant contends his prior counsel failed to impeach Agent Bigham because she testified the images were suspected child pornography but "her report"[2] said the images were not child pornography. (Dkt. 90 at 20.) The Court has doubts Agent Bingham's passing references to the photos as "suspected child pornography" were impeachable, inconsistent statements. But even if Agent Bigham's statements could be impeached by the intelligence report, Magistrate Judge Larkins had ample opportunity to assess Agent Bingham's credibility, including her characterization of the images since the images and cyber tip were admitted as exhibits during the hearing. (Dkt. 28 at 11:1–12:4.) Officer Brewer's testimony also corroborated Agent Bigham's testimony since she testified that during the January 3 call, Agent Bigham told her "that they had received a cybertip on Holland that he's unloading erotic photos to Instagram. That he used his own phone number to establish the Instagram account, and that the photos

---

[2] The document Defendant contends is Agent Bigham's report appears to be the intelligence report Agent Bigham received from GBI's intel analyst. (Dkt. 90-1.)

appeared to be boys ages 10 to 12." (*Id.* at 60:8–15.)  Officer Brewer also testified that Agent Bigham stated the boys were not entirely nude, "but definite outline of the boys penis' could be noted."  (*Id.* at 60:15–17.) Defendant has not shown "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

Defendant also contends prior counsel's admission that he improperly and impermissibly accessed the internet was improper.  (Dkt. 90 at 20.)  Defendant does not state what admission he is referring to. But even if counsel admitted during the suppression hearing that Defendant had impermissibly accessed the internet on a prior occasion, it is irrelevant.  The issue at the suppression hearing was what Officer Brewer knew at the time of the search.  *See Yuknavich*, 419 F.3d at 1311 (to determine whether an officer has a particularized and objective basis for suspected wrongdoing, the court must "take stock of everything [officers] knew before searching").  Defendant's counsel's statements at the suppression hearing are irrelevant to that determination.

Defendant finally argues his counsel was ineffective because he did not effectively obtain the necessary documentation to permit him to

litigate issues about Defendant's prior misbehaviors and criminal misconduct. (Dkt. 90 at 20–21.) Defendant focuses on prior counsel's failure to obtain the transcript from his prior revocation which would have established that his prior conduct was not similar to the facts here.[3] (*Id.*) Officer Brewer testified that when she began supervising Defendant, she reviewed his presentence report, judgment and commitment, any documents regarding his case, and any notes from the prior probation officers. (Dkt. 28 at 43:2, 44:2–5.) This included review of Defendant's violation report and petition filed in 2017. (*Id.* at 45:2–9.) When Officer Brewer reviewed the documents, she became generally familiar with the contents and Defendant's personal background and criminal history. (*Id.* at 46:1–8.) Officer Brewer testified that she learned, in early 2017, Defendant's probation officer made an unannounced visit and noticed several unpermitted cell phones. (*Id.* at 50:2–6.) The phones were taken, and a revocation petition was filed. (*Id.* at 50: 8–12.) The violations alleged in that revocation petition included Defendant (1) possessing seven cell phones capable of accessing the

---

[3] Defendant also makes passing reference to files from U.S. Probation, Dismas House, and the Highland Institute, which the Court addresses below. (*See* III.C.)

internet without obtaining permission and (2) possessing two cell phones that contained sexually oriented material or pornography. (*Id.* at 51:12–24.) Officer Brewer also testified that Defendant ultimately admitted the violations alleged in the petition. (*Id.* at 51:6–11.) This is the information Officer Brewer knew. Nothing in the revocation hearing bears on what Officer Brewer testified she knew at the time of the search which is what is relevant. *See Yuknavich*, 419 F.3d at 1311 (to determine whether an officer has a particularized and objective basis for suspected wrongdoing, the court must "take stock of everything [officers] knew before searching"). Even if prior counsel did not obtain the revocation transcript, there is no indication Defendant suffered any prejudice.

## C. Litigation Prevention

Defendant finally argues his motion to suppress should be reconsidered and the evidence should be reopened because he was consistently denied access to files from U.S. Probation, Dismas House, and the Highland Institute. (Dkt. 90 at 21.) Defendant asks the Court to issue an order directing U.S. Probation, Dismas House, and the Highland Institute to turn over all files and records. (*Id.* at 22.) Defendant contends the Court "heavily relied on" his prior conduct and

alleged misbehavior outlined by Officer Brewer, but he was unable to access the U.S. Probation file which was imperative for challenging the allegations in Officer Brewer's testimony.  (*Id.* at 21.)  Defendant also argues Officer Brewer provided very specific testimony about Defendant's plan of action requests at the Highland Institute, testifying that if granted internet access, a plan of action would be held by the Highland Institute.  (*Id.* at 22.)  But Defendant was precluded from obtaining the plans of action.  (*Id.*)

As to U.S. Probation's file, Defendant has identified no information he thinks may be in the file that could change the reasonable suspicion analysis and courts have consistently determined Federal Rule of Criminal Procedure 16, *Jencks*, *Giglio*, and *Brady* "do not apply to probation officers."  *United States v. Suarez-Flores*, No. 1:07-CR-279, 2009 WL 10677573, at *1 (N.D. Ga. July 16, 2009).  Defendant cites *United States v. Alvarez*[4] contending the Court erred by specifically withholding the full scope of the probationary file as it may have contained exculpatory evidence.  (Dkt. 95 at 5.)  In *Alvarez*, the Ninth Circuit held that a district court errs when the court "fails to conduct an

---

[4] 358 F.3d 1194 (9th Cir. 2004).

*in camera* review of the probation files of significant witnesses pursuant to a timely defense request for *Brady* materials." 358 F.3d at 1209. The *Alvarez* holding is witnesses. Defendant fails to identify, and the Court is unaware of, any case in which a court ordered U.S. Probation to produce a *defendant's file* to the defendant.

As to records from the Highland Institute, Defendant contends they could help him challenge Officer Brewer's testimony that Defendant never received permission to use the internet. (Dkt. 90 at 21–22.) But Officer Brewer unequivocally testified Defendant never had permission to use the internet. (Dkt. 28 at 70:6–14, 71:14–73:24, 83:15–16.) So even if the Highland Institute had granted Defendant permission, it was irrelevant because Officer Brewer did not know that at the time of the search. And Defendant did not have permission to use Instagram or possess sexually oriented material. (Dkt. 24-9.) The Highland Institute records are thus irrelevant. Defendant also never specifically addresses the Dismas House records, and the Court sees no reason why those records would change the reasonable suspicion analysis.

## IV.  Conclusion

The Court **DENIES** Defendant Holland's Motion to Reconsider and Reopen the Evidence on his Motion to Suppress Evidence Obtained from the Search and Seizure that Took Place on January 14, 2019.  (Dkt. 90.)

**SO ORDERED** this 8th day of October, 2021.

MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE